# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOANNE G. MURPHY, Individually and on Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | |
| INSULET CORPORATION, DUANE DESISTO, PATRICK J. SULLIVAN, ALLISON DORVAL, and BRIAN ROBERTS, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Joanne G. Murphy ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by INSULET CORPORATION ("Insulet" or the "Company"), with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Insulet; and (c) review of other publicly available information concerning Insulet.

## NATURE OF THE ACTION AND OVERVIEW

1. This is a class action on behalf of purchasers of Insulet securities between February 27, 2013 and April 30, 2015, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2. Insulet is primarily engaged in the development, manufacturing and sale of its proprietary OmniPod Insulin Management System (the "OmniPod System"), an insulin infusion system for people with insulin-dependent diabetes. The OmniPod System features a disposable tubeless OmniPod which is worn on the body for approximately three days at a time and the handheld, wireless Personal Diabetes Manager ("PDM").

3. On April 30, 2015, after the market closed, the Company announced first quarter 2015 earnings below analyst expectations.  According to the Company, certain Drug Delivery and International shipments planned for the first quarter of 2015 were expected to be realized during remainder of 2015.

4. On this news, shares of Insulet declined $2.88 per share, nearly 10%, to close on May 1, 2015, at $26.97 per share, on unusually heavy volume.

5.     Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (1) that the Company was experiencing slower demand for its products; (2) that the Company was facing issues with its sales and marketing efforts; (3) that, as a result, the Company experienced unevenness in its financial performance; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects lacked a reasonable basis.

6.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. §78aa).

9.     Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391(b) and Section 27 of the Exchange Act (15 U.S.C. §78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the preparation and dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.  Additionally, Insulet's principal executive offices are located within this Judicial District.

10.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

11.     Plaintiff Joanne G. Murphy, as set forth in the accompanying certification, incorporated by reference herein, purchased Insulet common stock during the Class Period and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12.     Defendant Insulet is a Delaware corporation with its principal executive offices located at 600 Technology Park Drive, Suite 200, Billerica, Massachusetts 01821.

13.     Defendant Duane DeSisto ("DeSisto") was Chief Executive Officer ("CEO") and a director of Insulet until September 16, 2014.

14.     Defendant Patrick J. Sullivan ("Sullivan") was CEO and a director of Insulet since September 16, 2014.

15.     Defendant Allison Dorval ("Dorval") was Chief Financial Officer ("CFO") of Insulet since November 6, 2014.

16.     Defendant Brian Roberts ("Roberts") was CFO of Insulet until November 6, 2014.

17.     Defendants DeSisto, Sullivan, Dorval, and Roberts are collectively referred to hereinafter as the "Individual Defendants."   The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Insulet's reports to the SEC, press releases and presentations to securities analysts, money and

portfolio managers and institutional investors, *i.e.*, the market.  Each defendant was provided

with copies of the Company's reports and press releases alleged herein to be misleading prior to,

or shortly after, their issuance and had the ability and opportunity to prevent their issuance or

cause them to be corrected.  Because of their positions and access to material non-public

information available to them, each of these defendants knew that the adverse facts specified

herein had not been disclosed to, and were being concealed from, the public, and that the positive

representations which were being made were then materially false and/or misleading.  The

Individual Defendants are liable for the false statements pleaded herein, as those statements were

each "group-published" information, the result of the collective actions of the Individual

Defendants.

## SUBSTANTIVE ALLEGATIONS
### Background

18.    Insulet is primarily engaged in the development, manufacturing and sale of its

proprietary OmniPod System, an insulin infusion system for people with insulin-dependent

diabetes. The OmniPod System features a disposable tubeless OmniPod which is worn on the

body for approximately three days at a time and the handheld, wireless PDM.

### Materially False and Misleading
### Statements Issued During the Class Period

19.    The Class Period begins on February 27, 2013.  On this day, Insulet issued a press

release entitled, "Insulet Reports Fourth Quarter and Full Year 2012 Results."  Therein, the

Company, in relevant part, stated:

> *Company Achieves Operating Cashflow Profitability for Q4*
> *Year of Strong Growth Capped Off With FDA Clearance of the New OmniPod*
> *Insulin Pump*

Insulet Corporation (NASDAQ: PODD), the leader in tubeless insulin pump technology with its OmniPod® Insulin Management System, today announced financial results for the fourth quarter and full year ended December 31, 2012.

### Fourth Quarter Results

Fourth quarter 2012 revenue increased 23% to $57.8 million, compared to $47.2 million in the fourth quarter of 2011. Gross profit for the fourth quarter of 2012 improved by 26% to $25.3 million, as compared to a gross profit of $20.1 million for the fourth quarter of 2011. The increase in both revenue and gross profit was driven by continued growth of the OmniPod customer base both in the U.S. and international markets during the fourth quarter of 2012.

Operating loss for the fourth quarter of 2012 was $6.1 million, compared to an operating loss of $10.5 million in the fourth quarter of 2011, an improvement of over 40%. The decrease in the operating loss is mainly driven by the increase in gross profit quarter over quarter.

Net loss for the fourth quarter of 2012 was $10.2 million, or $0.21 per share, compared to a net loss of $14.3 million, or $0.30 per share, for the fourth quarter of 2011.

"2012 was an extremely successful year across all fronts for Insulet, with strong revenue growth and expanded gross margins driving us to operating cash profitability* in the fourth quarter," said Duane DeSisto, President and Chief Executive Officer of Insulet. "The year culminated with our most exciting accomplishment, FDA clearance of the new OmniPod. We have begun shipping the new OmniPod to new customers and expect to begin transitioning our existing customer base to the new OmniPod in the coming weeks. Looking ahead to 2013, we expect continued growth to be driven by robust demand for the new OmniPod, which retains all the easy-to-use features of the original OmniPod, and is over a third smaller in size and a quarter lighter."

### Full Year Results

For the year ended December 31, 2012, revenue increased 39% to $211.4 million from $152.3 million for the year ended December 31, 2011. Gross profit for the year ended December 31, 2012 was $92.3 million, an improvement of 38%, as compared to a gross profit of $66.7 million, for the year ended December 31, 2011.

Operating loss for the year ended December 31, 2012 was $36.0 million as compared to an operating loss of $42.5 million in the year ended December 31, 2011. Total operating expenses were $128.3 million for the year ended December 31, 2012, compared to $109.2 million for the year ended December 31, 2011. This increase in operating expenses was primarily related to the June 2011 acquisition

of Neighborhood Diabetes, the expansion of our commercial team and higher research and development costs associated with the development and approval of our next generation OmniPod.

Net interest expense was $15.7 million for the year ended December 31, 2012, compared to $14.6 million for the year ended December 31, 2011. Income tax expense was $0.2 million in the year ended December 31, 2012, compared to income tax benefit of $11.2 million for the year ended December 31, 2011. Income tax expense in 2012 primarily related to federal, state and foreign taxes. Income tax benefit in 2011 primarily resulted from acquired deferred tax liabilities which were used to offset preexisting deferred tax assets and reduced the amount of the valuation allowance required.

Net loss for the year ended December 31, 2012 was $51.9 million, or $1.08 per share, compared to $45.8 million, or $0.98 per share, for the year ended December 31, 2011.

As of December 31, 2012, the Company had cash and cash equivalents of $57.3 million compared to $94.0 million at December 31, 2011. In January 2013, the Company sold approximately 4.7 million shares of common stock at $20.75 per share and received net proceeds of approximately $92.8 million.

*Guidance*
For the year ending December 31, 2013, the Company estimates that revenue will be in the range of $240 to $255 million. For the first quarter ending March 31, 2013, the Company expects that revenue will be in the range of $56 to $59 million.

20.     On February 28, 2013, Insulet filed its Annual Report with the SEC on Form 10-K for the 2012 fiscal year.  The Company's Form 10-K was signed by Defendants DeSisto and Roberts, and reaffirmed the Company's statements previously announced on February 27, 2013.

21.     On February 27, 2014, Insulet issued a press release entitled, "Insulet Reports Fourth Quarter and Full Year 2013 Results." Therein, the Company, in relevant part, stated:

*Company Achieves Operating Profitability in Q4; U.S. Transition to New OmniPod Insulin Pump Complete*

Insulet Corporation (NASDAQ: PODD), the leader in tubeless insulin pump technology with its OmniPod® Insulin Management System, today announced financial results for the fourth quarter and full year ended December 31, 2013.

*__Fourth Quarter Results__*

Fourth quarter 2013 revenue increased 19% to $68.5 million, compared to $57.8 million in the fourth quarter of 2012. The increase in revenue is a result of continued strong patient adoption of the OmniPod insulin pump in the United States and international markets during the fourth quarter of 2013. This level of revenue growth was achieved despite a reduction in Neighborhood Diabetes revenue from the sale of testing supplies to Medicare patients due to CMS' competitive bidding program, which went into effect on July 1, 2013. Excluding the impact of the competitive bidding program, revenue increased by over 25% as compared to the fourth quarter of 2012. Gross profit for the fourth quarter of 2013 improved by 30% to $33.0 million, as compared to a gross profit of $25.3 million for the fourth quarter of 2012. Gross profit improvements were largely a result of the completion of the transition of the U.S. customer base to the lower-cost new OmniPod, offset by certain costs associated with the transition.

Operating profit for the fourth quarter of 2013 was $0.2 million, compared to an operating loss of $6.1 million in the fourth quarter of 2012. The improvement in the operating loss was mainly driven by the increase in gross profit in the respective quarters. Operating expenses increased by approximately $1.4 million in the fourth quarter of 2013 compared to the fourth quarter of 2012 largely reflecting the overall growth in the customer base from the prior year.

Net loss for the fourth quarter of 2013 was $2.5 million, or $0.04 per share, compared to a net loss of $10.2 million, or $0.21 per share, for the fourth quarter of 2012.

"2013 was one of the most exciting years in Insulet's history, and I am proud of all that our team accomplished," said Duane DeSisto, President and Chief Executive Officer of Insulet. "We launched the smaller, lighter OmniPod, transitioned all of our OmniPod customers to the new product in less than six months and established manufacturing operations capable of producing nearly one million pods per month. We are extremely pleased with achieving operating profitability in the fourth quarter and are poised for even greater success in 2014. Looking forward, we expect OmniPod revenue to grow 30% year over year and to achieve operating profitability for the full year."

### *Full Year Results*

For the year ended December 31, 2013, revenue increased 17% to $247.1 million from $211.4 million for the year ended December 31, 2012. Gross profit for the year ended December 31, 2013 was $112.4 million, an improvement of 22%, as compared to a gross profit of $92.3 million for the year ended December 31, 2012.

Operating loss for the year ended December 31, 2013 was $29.1 million as compared to an operating loss of $36.0 million in the year ended December 31,

2012. Total operating expenses were $141.5 million for the year ended December 31, 2013, compared to $128.3 million for the year ended December 31, 2012. This increase in operating expenses was primarily related to costs incurred as a result of the launch of the new OmniPod System as well as one-time legal fees and settlement costs incurred in connection with the Settlement and Cross-License Agreement entered into with Medtronic Minimed.

Net interest and other expense was $15.7 million for the year ended December 31, 2013, consistent with the year ended December 31, 2012. Net interest and other expense primarily relates to cash and non-cash interest expense on our 3.75% Convertible Notes due in June 2016.

Net loss for the year ended December 31, 2013 was $45.0 million, or $0.83 per share, compared to $51.9 million, or $1.08 per share, for the year ended December 31, 2012.

As of December 31, 2013, the Company had cash and cash equivalents of $149.7 million compared to $57.3 million at December 31, 2012.

*Guidance*
For the year ending December 31, 2014, the Company estimates that revenue will be in the range of $295 to $315 million. For the first quarter ending March 31, 2014, the Company expects that revenue will be in the range of $67 to $71 million.

22.     On February 28, 2014, Insulet filed its Annual Report with the SEC on Form 10-K for the 2013 fiscal year.  The Company's Form 10-K was signed by Defendants DeSisto and Roberts, and reaffirmed many of the Company's statements previously announced on February 27, 2014.

23.     On May 7, 2014, Insulet issued a press release entitled, "Insulet Reports First Quarter 2014 Results."  Therein, the Company, in relevant part, stated:

**Revenue Increases Over 20% From Prior Year; Demand for New OmniPod and Expanded Commercial Team Expected to Drive Continued Growth**

Insulet Corporation (NASDAQ: PODD), the leader in tubeless insulin pump technology with its OmniPod® Insulin Management System, today announced financial results for the first quarter ended March 31, 2014.

*First Quarter Results*

Sales of the new OmniPod both in the U.S. and in international markets helped drive strong increases in first quarter revenues and gross profit. First quarter 2014 revenue increased 21% to $69.2 million from $57.4 million in the first quarter of 2013. This level of revenue growth was achieved despite a reduction in Neighborhood Diabetes revenue from the sale of testing supplies to Medicare patients due to CMS' competitive bidding program, which went into effect on July 1, 2013. Excluding the impact of the competitive bidding program, revenue increased by approximately 30% year over year. Gross profit for the first quarter of 2014 rose 30% to $32.8 million from $25.2 million for the first quarter of 2013. "Revenues continue to grow at an impressive rate," said Duane DeSisto, President and Chief Executive Officer of Insulet. "We have seen customer acceptance of our new OmniPod drive growth both here in the U.S. and internationally. We have begun to add additional commercial team members in high-performing territories. Many of them hit the ground running in April, and we expect to see a positive impact on second quarter growth as a result of their support. With a year's worth of experience behind us, we have made significant progress regarding the consistency of our manufacturing process for the new OmniPod with capacity to produce nearly a million OmniPods per month."

Operating loss for the first quarter of 2014 was $1.9 million, compared to an operating loss of $6.2 million in the first quarter of 2013, an improvement of approximately 70% as the Company continues to focus on reaching operating profitability for the year. Operating expenses were $34.7 million in the first quarter of 2014 compared to $31.4 million in the first quarter of 2013. The increase in operating expenses is primarily due to an increase in compensation related expenses, including stock-based compensation which was driven by the increased stock price through the first quarter.

Net loss for the first quarter of 2014 was $6.1 million, or $0.11 per share, compared to a net loss of $10.7 million, or $0.20 per share, for the first quarter of 2013.

As of March 31, 2014, the Company had cash and cash equivalents of $145.6 million compared to $149.7 million at December 31, 2013.

_Guidance_

For the year ending December 31, 2014, the Company reiterates its estimate that revenue will be in the range of $295 to $315 million. For the second quarter of 2014, the Company expects that revenue will be in the range of $70 to $74 million.

24.     On May 7, 2014, Insulet filed its Quarterly Report with the SEC on Form 10-Q for the 2014 fiscal first quarter.  The Company's Form 10-Q was signed by Defendants DeSisto and Roberts, and reaffirmed the Company's statements previously announced that day.

25.     On August 7, 2014, Insulet issued a press release entitled, "Insulet Reports Second Quarter 2014 Results."  Therein, the Company, in relevant part, stated:

### *Company Achieves Record Revenue and Gross Profit*

Insulet Corporation (NASDAQ: PODD), the leader in tubeless insulin pump technology with its OmniPod® Insulin Management System, today announced financial results for the three and six months ended June 30, 2014.

### *Second Quarter Results*

Second quarter 2014 revenue increased 20% to $72.0 million, compared to $60.1 million in the second quarter of 2013. Gross profit for the second quarter of 2014 rose 33% to $35.8 million from $26.8 million for the second quarter of 2013. The Company reached 50% gross margin for the second quarter of 2014, compared to 45% for the second quarter of 2013.

"We made significant progress across all aspects of the business in the second quarter. Revenue increased by 35% within the OmniPod business and 20% overall," said Duane DeSisto, President and Chief Executive Officer of Insulet. "We achieved a 50% gross margin for the first time and excluding the impact of the patent settlement, we generated nearly $2 million of operating profit. I remain confident and excited about a strong second half of the year as we begin to see the return of investment in our new commercial team members, continue to see additional gross margin expansion and remain operating profitable."

Operating expenses were $41.0 million in the second quarter of 2014 compared to $32.7 million in the second quarter of 2013. During the second quarter, the Company settled patent infringement litigation with Becton, Dickinson and Company resulting in one-time settlement and legal costs totaling approximately $7 million. Operating loss for the second quarter of 2014 was $5.3 million, compared to an operating loss of $5.8 million in the second quarter of 2013, an improvement of 9%. Excluding the impact of the settlement and legal costs, the Company would have reported an operating profit of $1.7 million in the quarter.
Interest and other expense was $23.8 million in the second quarter of 2014 compared to $4.6 million in the second quarter of 2013. The increase in interest and other expense is due to the loss from the extinguishment of debt recorded in June 2014. The Company sold approximately $201.3 million in principal amount of 2% Senior Convertible Notes due June 2019 and concurrently repurchased

$114.9 million in principal amount of 3.75% Senior Convertible Notes due June 2016 for a cash payment of approximately $160.7 million. The Company recorded an $18.9 million loss from the extinguishment of debt in the second quarter of 2014 in connection with the repurchase of its 3.75% Notes. The remaining $28.8 million of 3.75% Senior Convertible Notes were subsequently called on June 17, 2014 and retired on July 28, 2014 for $28.8 million in cash and approximately 348,000 shares of common stock.

Net loss for the second quarter of 2014 was $29.1 million, or $0.53 per share, compared to a net loss of $10.5 million, or $0.20 per share, for the second quarter of 2013. Excluding the impact of the extinguishment of debt and the settlement and legal costs, the Company's net loss was $3.2 million or approximately $0.06 per share.

For the six months ended June 30, 2014, revenue increased 20% to $141.2 million from $117.4 million for the first six months of 2013. Gross profit for the first six months of 2014 was $68.6 million, as compared to a gross profit of $52.0 million in the first six months of 2013. Operating loss for the six months ended June 30, 2014 was $7.2 million, as compared to an operating loss of $12.0 million in the six months ended June 30, 2013. Net loss for the first six months of 2014 was $35.3 million, or $0.64 per share, compared to $21.2 million, or $0.40 per share, for the first six months of 2013.

As of June 30, 2014, the Company had cash and cash equivalents of $175.5 million compared to $149.7 million at December 31, 2013.

### *Guidance*

For the year ending December 31, 2014, the Company updated its estimate of revenue to be in the range of $290 to $300 million. The Company adjusted the midpoint of 2014 guidance down approximately 3%, reflecting a payor issue that is delaying new patient starts due to changes in the payor's general pump reimbursement policies. For the third quarter of 2014, the Company expects that revenue will be in the range of $73 to $77 million.

26.     On August 7, 2014, Insulet filed its Quarterly Report with the SEC on Form 10-Q for the 2014 fiscal second quarter.  The Company's Form 10-Q was signed by Defendants DeSisto and Roberts, and reaffirmed the Company's statements previously announced that day.

27.     On November 5, 2014, Insulet issued a press release entitled, "Insulet Reports Third Quarter 2014 Results."  Therein, the Company, in relevant part, stated:

***Revenue Up 23% and Gross Profit Up 39% Year Over Year; Company Achieves Net Breakeven, Excluding One-Time Charges***

Insulet Corporation (NASDAQ: PODD), the leader in tubeless insulin pump technology with its OmniPod® Insulin Management System, today announced financial results for the three and nine months ended September 30, 2014.

## *Third Quarter Results*

Third quarter 2014 revenue increased 23% to $75.0 million, compared to $61.1 million in the third quarter of 2013. Gross profit for the third quarter of 2014 rose 39% to $38.0 million from $27.4 million for the third quarter of 2013. The Company continued to expand gross margin in the third quarter of 2014, reaching 51%, compared to 45% in the third quarter of 2013.

"The revenue and gross profit levels we achieved in the third quarter demonstrate our continued focus on driving demand for the OmniPod with people living with Type I diabetes," said Patrick Sullivan, President and Chief Executive Officer of Insulet. "In my first fifty days at Insulet, I've had the opportunity to gain a much deeper understanding of our Company, and my enthusiasm for this business and its future has grown significantly. We are well poised for continued growth with the easiest-to-use, most innovative product in the insulin delivery market with a pipeline of initiatives that will continually raise the bar for years to come."

Operating expenses were $40.9 million in the third quarter of 2014, compared to $44.7 million in the third quarter of 2013. During the third quarter of 2014, the Company recorded approximately $7 million of additional compensation expense relating to the recent CEO transition. The additional compensation charge was primarily related to non-cash amounts. Operating expenses in the third quarter of 2013 included approximately $10 million related to the legal and settlement costs associated with the Medtronic patent litigation, which was settled in September 2013.

Operating loss for the third quarter of 2014 was $2.9 million, compared to an operating loss of $17.3 million in the third quarter of 2013, an improvement of more than 80%. Excluding the one-time compensation charges, the Company would have reported an operating profit of approximately $4 million for the third quarter of 2014.

Interest and other expense was $7.9 million in the third quarter of 2014, compared to $4.0 million in the third quarter of 2013. The increase in interest and other expense is due to the $4.3 million loss recorded relating to the conversion of the remaining 3.75% Senior Convertible Notes in the third quarter for approximately $28.8 million in cash and 349,000 shares of common stock. All 3.75% Senior Convertible Notes were retired as of September 30, 2014.

Excluding the loss on the early extinguishment of debt and the compensation charges related to the CEO transition, the Company reached breakeven results at the net income line and on an earnings per share basis in the third quarter of 2014. Net loss for the third quarter of 2014 was $10.8 million, or $0.19 per share, compared to a net loss of $21.3 million, or $0.39 per share, for the third quarter of 2013.

### *Nine Month Results*

For the nine months ended September 30, 2014, revenue increased 21% to $216.2 million from $178.6 million for the first nine months of 2013. Gross profit for the first nine months of 2014 was $106.6 million, as compared to a gross profit of $79.4 million in the first nine months of 2013. Operating loss for the nine months ended September 30, 2014 was $10.0 million, as compared to an operating loss of $29.3 million in the nine months ended September 30, 2013. Net loss for the first nine months of 2014 was $46.1 million, or $0.83 per share, compared to $42.5 million, or $0.79 per share, for the first nine months of 2013.

As of September 30, 2014, the Company had cash and cash equivalents of $146.4 million compared to $149.7 million at December 31, 2013.

### *Guidance*

For the year ending December 31, 2014, the Company revised its estimate of revenue to be in the range of $292 to $297 million. For the fourth quarter of 2014, the Company expects that revenue will be in the range of $76 to $81 million.

28.    On November 5, 2014, Insulet filed its Quarterly Report with the SEC on Form 10-Q for the 2014 fiscal third quarter.  The Company's Form 10-Q was signed by Defendants Sullivan and Roberts, and reaffirmed the Company's statements previously announced that day.

29.    On February 26, 2015, Insulet issued a press release entitled, "Insulet Reports Fourth Quarter and Full Year 2014 Financial Results."  Therein, the Company, in relevant part, stated:

### *Full Year 2014 Revenue Increased 17%*

Insulet Corporation (NASDAQ: PODD), the leader in tubeless insulin pump technology with its OmniPod® Insulin Management System, today announced financial results for the three months and full year ended December 31, 2014.

### *Fourth Quarter Highlights and Recent Developments:*

- Continuing to drive OmniPod adoption resulting in double digit year-over-year growth.
- Strengthening senior leadership team with key executive appointments in commercial operations including sales, marketing, managed care and customer support.
- Forming drug delivery business unit with the addition of experienced senior executives.
- Extending exclusive blood glucose meter partnership with Abbott Laboratories.
- Transforming Canadian distribution to a direct model for OmniPod.

"Insulet's OmniPod System, the leading tubeless insulin delivery technology and most differentiated insulin delivery system on the market, allows us to further our leadership in 'intelligent' drug delivery," said Patrick Sullivan, President and Chief Executive Officer. "We have recently enhanced our senior management team with several executives who bring outstanding experience and executional expertise to Insulet and together we are driving focus, growth and increased accountability throughout the entire organization. We are confident that we have the right strategy and team to take Insulet to the next level and ensure OmniPod remains well-positioned for continued adoption in the U.S. and international markets."

"Looking ahead to the remainder of 2015, as an organization we recognize the challenges we face and are energized by the opportunity we see before us," continued Mr. Sullivan. "In recent months, we have put in place a number of catalysts to drive growth, including sales force expansion and a focused managed care effort. We believe we are well-positioned to build momentum and drive stronger top-line growth as the year progresses."

***Fourth Quarter 2014 Financial Results:***

Fourth quarter 2014 revenue increased 6% to $72.6 million, compared with $68.5 million in the fourth quarter of 2013.

Gross profit for the fourth quarter of 2014 improved 11% to $36.7 million from $33.0 million in the fourth quarter of 2013. The Company further expanded gross margin in the fourth quarter of 2014 to 51%, compared with 48% in the same quarter of 2013.

Operating loss for the fourth quarter of 2014 was $2.3 million, compared with an operating profit of $0.2 million in the fourth quarter of 2013. This result was primarily driven by a 19% increase in operating expenses to $38.9 million compared with $32.8 million in the prior year. During the fourth quarter of 2014, the Company recorded $3.8 million of charges (of which $1.6 million was non-cash) consisting primarily of severance and stock-based compensation related to

recent management transitions. There were no one-time charges in the fourth quarter of 2013.

Net loss for the fourth quarter of 2014 was $5.4 million, or $0.10 per share, compared with net loss of $2.5 million, or $0.04 per share, in the fourth quarter of 2013.

**Full Year 2014 Results:**

For the year ended December 31, 2014, revenue increased 17% to $288.7 million from $247.1 million in 2013.

Gross profit for the year ended December 31, 2014 improved 27% to $143.3 million, compared with $112.4 million in 2013. Gross margin improved to 50% in 2014 compared with 45% in 2013.

Operating loss for the year ended December 31, 2014 improved to $12.3 million, compared with an operating loss of $29.1 million in 2013. For the year ended December 31, 2014, operating loss included a charge of approximately $10.4 million (of which $6.8 million was non-cash) related to management transition costs and a charge of approximately $7 million in settlement and legal expenses related to the Becton, Dickinson and Company patent infringement suit. Operating loss for the year ended December 31, 2013 included a charge of approximately $10 million related to the Company's settlement of the Medtronic patent infringement lawsuit, as well as costs incurred related to the launch of the next-generation OmniPod.

Net loss for the year ended December 31, 2014 was $51.5 million, or $0.93 per share, compared with $45.0 million, or $0.83 per share for the full year 2013.
As of December 31, 2014, the Company had cash and cash equivalents of $151.2 million compared with $149.7 million at December 31, 2013.

**Guidance:**

For the year ending December 31, 2015, the Company expects revenue to be in the range of $305 to $320 million. For the first quarter of 2015, the Company expects revenue to be in the range of $67 to $69 million.

30.     On February 26, 2015, Insulet filed its Annual Report with the SEC on Form 10-K for the 2014 fiscal year.  The Company's Form 10-K was signed by Defendants Sullivan and Dorval, and reaffirmed the Company's statements previously announced that day.

31.     The statements contained in ¶¶19-30 were materially false and/or misleading when made because defendants failed to disclose or indicate the following: (1) that the Company was experiencing slower demand for its products; (2) that the Company was facing issues with its sales and marketing efforts; (3) that, as a result, the Company experienced unevenness in its financial performance; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects lacked a reasonable basis.

### Disclosures at the End of the Class Period

32.     On April 30, 2015, after the market closed, Insulet issued a press release entitled, "Insulet Reports First Quarter 2015 Financial Results."  Therein, the Company, in relevant part, stated:

*Reaffirms Full Year 2015 Guidance*

Insulet Corporation (NASDAQ: PODD), the leader in tubeless insulin pump technology with its OmniPod® Insulin Management System, today announced financial results for the three months ended March 31, 2015.

*First Quarter Highlights and Recent Developments:*

- First quarter financial results:
  - U.S. OmniPod revenue in-line with Company's expectations.
  - ***Drug Delivery and International shipments planned for the first quarter now expected to be realized during remainder of 2015.***
- Strengthened senior leadership team with appointment of highly-experienced Chief Financial Officer.
- Previously announced:
  - First quarter key executive appointments across sales, marketing, managed care, customer support and investor relations.
  - Extension of exclusive blood glucose meter partnership with Abbott Diabetes Care, Inc.
  - Transformation of Canadian distribution to direct model for OmniPod.

"With our U.S. OmniPod business on track, in spite of some unevenness in our first quarter performance in our other product areas, we remain on track to achieve our originally-stated full-year revenue expectations and we are excited about the promising opportunities ahead of us," said Patrick Sullivan, President

and Chief Executive Officer. "I am strongly encouraged by the progress we have made toward our key initiatives. We recognize that we have work to do, however we are achieving important milestones in executing a strategy to ramp Insulet's sales and marketing efforts, enhance access to our innovative and differentiated technology, and further improve our global footprint. I am confident that we have the right talent to lead Insulet and position the Company for sustained accelerated growth over the long-term."

***First Quarter 2015 Financial Results:***

***First quarter 2015 revenue decreased 11% to $61.2 million, compared with $69.2 million in the first quarter of 2014.***

Operating loss for the first quarter of 2015 was $8.6 million, compared with an operating loss of $1.9 million in the first quarter of 2014. This result was primarily driven by a 19% increase in operating expenses to $41.4 million compared with $34.7 million in the prior year. Included in our operating expenses during the first quarter of 2015 and 2014 were charges of $2.4 million and $0.2 million (of which $1.2 million and zero were non-cash), respectively, consisting primarily of severance and stock-based compensation related to recent management transitions.

Net loss for the first quarter of 2015 was $11.8 million, or $0.21 per share, compared with net loss of $6.1 million, or $0.11 per share, in the first quarter of 2014.

***Guidance:***

For the year ending December 31, 2015, the Company is reaffirming its revenue guidance of $305 to $320 million. For the second quarter of 2015, the Company is expecting revenue to be in the range of $67 to $70 million.  (Emphasis added.)

33.     On this news, shares of Insulet declined $2.88 per share, nearly 10%, to close on May 1, 2015, at $26.97 per share, on unusually heavy volume.

## CLASS ACTION ALLEGATIONS

34.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all those who purchased Insulet's securities between February 27, 2013 and April 30, 2015, inclusive (the "Class Period") and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and

directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

35.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Insulet's securities were actively traded on the Nasdaq (the "NASDAQ").  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Millions of Insulet shares were traded publicly during the Class Period on the NASDAQ.  As of April 28, 2015, Insulet had 56,750,931 shares of common stock outstanding.  Record owners and other members of the Class may be identified from records maintained by Insulet or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

36.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

37.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

38.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)      whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Insulet; and

(c)      to what extent the members of the Class have sustained damages and the proper measure of damages.

39.      A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

40.      The market for Insulet's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Insulet's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Insulet's securities relying upon the integrity of the market price of the Company's securities and market information relating to Insulet, and have been damaged thereby.

41.      During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Insulet's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  Said statements and omissions were materially

false and/or misleading in that they failed to disclose material adverse information and/or misrepresented the truth about Insulet's business, operations, and prospects as alleged herein.

42.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Insulet's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## LOSS CAUSATION

43.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

44.     During the Class Period, Plaintiff and the Class purchased Insulet's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

45.     As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.   Defendants, by virtue of their receipt of information reflecting the true facts regarding Insulet, his/her control over, and/or receipt and/or modification of Insulet's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Insulet, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

46.     The market for Insulet's securities was open, well-developed and efficient at all relevant times.   As a result of the materially false and/or misleading statements and/or failures to disclose, Insulet's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Insulet's securities and market information relating to Insulet, and have been damaged thereby.

47.     During the Class Period, the artificial inflation of Insulet's stock was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.   As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Insulet's business, prospects and operations.   These material misstatements and/or omissions created an unrealistically positive assessment of Insulet and its

business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company stock. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, and each of them has been damaged as a result.

48.     At all relevant times, the market for Insulet's securities was an efficient market for the following reasons, among others:

(a)     Insulet stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, Insulet filed periodic public reports with the SEC and/or the NASDAQ;

(c)     Insulet regularly communicated with public investors *via* established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Insulet was followed by securities analysts employed by brokerage firms who wrote reports about the Company and its financial performance, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

49.     As a result of the foregoing, the market for Insulet's securities promptly digested current information regarding the Company from all publicly available sources and reflected such information in Insulet's stock price. Under these circumstances, all purchasers of Insulet's

securities during the Class Period suffered similar injury through their purchase of Insulet's securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

50.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Insulet who knew that the statement was false when made.

### FIRST CLAIM
### Violation of Section 10(b) of
### The Exchange Act and Rule 10b-5
### Promulgated Thereunder Against All Defendants

51.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

52.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and

other members of the Class to purchase Insulet's securities at artificially inflated prices.   In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

53.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Insulet's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.   All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

54.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Insulet's financial well-being and prospects, as specified herein.

55.     These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Insulet's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Insulet and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a

course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

56.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

57.     The defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Insulet's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.  As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to

obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

58.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Insulet's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Insulet's securities during the Class Period at artificially high prices and were damaged thereby.

59.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Insulet was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Insulet securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

60.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

61.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM
### Violation of Section 20(a) of
### The Exchange Act Against the Individual Defendants

62.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

63.     The Individual Defendants acted as controlling persons of Insulet within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

64.     In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

65.     As set forth above, Insulet and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and/or omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED:  May 5, 2015                    **BLOCK & LEVITON LLP**

_/s/ Jason M. Leviton_____
Jason M. Leviton (BBO #678331)
Mark A. Delaney (BBO #652194)
155 Federal Street, Suite 400
Boston, MA 02110
Telephone:  (617) 398-5600
Facsimile:  (617) 507-6020
Jason@blockesq.com

**GLANCY PRONGAY & MURRAY LLP**
Lionel Z. Glancy
Robert V. Prongay
Casey E. Sadler
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone:  (310) 201-9150
Facsimile:   (310) 201-9160

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem, PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867

***Attorneys for Plaintiff Joanne G. Murphy***